## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARCUS JOHNSON,

                *Petitioner,*

   v.

D.F. OBERLANDER, et al.,

                *Respondents*

CIVIL ACTION
NO. 21-2235

**PAPPERT, J.**                                                                       **April 18, 2023**

### MEMORANDUM

On May 14, 2021, Marcus Johnson filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF 1.) After retaining counsel, Johnson filed an amended petition on July 21, 2021. (ECF 11.) Respondents answered the petition (ECF 23), and Magistrate Judge Reid issued a Report & Recommendation recommending the petition be denied and dismissed. (ECF 24.) Johnson filed timely objections to the R&R. (ECF 25.) After thoroughly reviewing the record, Judge Reid's R&R and Johnson's objections, the Court overrules the objections and adopts the R&R.

I

Judge Reid's R&R recounts the case's factual background. In short, Johnson was convicted by a jury for possession of an instrument of crime and first-degree murder for the killing of Nekeisha Eugene, his longtime partner and the mother of his nine-year-old child, Marcus Johnson, Jr. *See Commonwealth v. Johnson*, No. 2432 EDA 2016, 2017 WL 2984013, at *3 (Pa. Super. Ct. July 13, 2017). The court sentenced Johnson to mandatory life imprisonment. *Id.* After unsuccessful direct appeals, a state petition for

post-conviction relief and an appeal of the petition's denial, Johnson sought federal

habeas relief.

Johnson's petition asserts fourteen claims for relief: (1) trial counsel was

ineffective in failing to challenge Marcus, Jr.'s competency to testify; (2) trial counsel

was ineffective in failing to object to the admission of inculpatory hearsay text

messages which were not properly authenticated and for which the proper foundation

was not laid; (3) the evidence was insufficient to support a conviction for first-degree

murder because the specific intent to kill was not shown; and (4) the Superior Court

erred in finding eleven ineffective assistance of counsel claims waived on his PCRA

appeal.

He also argues that if they were waived, these eleven claims should be

considered on the merits under the *Martinez* exception.  Specifically, Johnson argues

trial counsel failed to:  (i) challenge on direct appeal the trial court's failure to permit

his brother Robert Jackson to testify about Johnson's "excited utterances" to Jackson;

(ii) raise on direct appeal a *Brady* claim that the Commonwealth failed to disclose that

witness Shavonne Robinson told prosecutors that a Facebook message she sent about

Johnson was untrue; (iii) challenge the admission of Robinson's testimony; (iv) impeach

Robinson and instead stipulated to her testimony; (v) request a mistrial after

Robinson's testimony; (vi) investigate and present medical and forensic evidence to

support Johnson's testimony; (vii) challenge expert witness Dr. Albert Chu's testimony

under the Confrontation Clause; (viii) object to Dr. Chu's testimony or to compel Dr.

Marlon Osborne, the person who performed the autopsy, to testify; (ix) ask the court to

order Dr. Chu to prepare an independent written report; (x) move to strike portions of

Dr. Chu's testimony that were not in the medical report; and (xi) challenge on direct appeal the court's limitation of the scope of Robert Jackson's cross examination.

Because Johnson objects to the entire R&R, the Court reviews Judge Reid's conclusions *de novo* and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## II

### A

Under 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings [unless the state court's decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). A state court ruling is "contrary to" clearly established federal law if the court applies a rule that contradicts Supreme Court precedent or if the court confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000). A state court ruling "is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

3

B

Before a federal court can grant a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *Lambert v. United States*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion ensures state courts have the first opportunity to review federal constitutional challenges to state convictions. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). For the same reason, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Id.* at 2064. To satisfy the exhaustion requirement, the petitioner must "fairly present" his claims to the state court; if he does not, the claims become procedurally defaulted and he may not raise them in federal court. *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005).

A petitioner may be exempt from the exhaustion requirement under three circumstances: (1) he demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law; (2) he demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice; or (3) he invokes the narrow *Martinez* exception. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000). To show prejudice, the petitioner must prove "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*

The fundamental miscarriage of justice exception "will apply only in extraordinary cases, *i.e.,* where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* Asserting actual innocence requires the petitioner to "show it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." *Hubbard v. Pinchak*, 378 F.3d 333, 339 (3d Cir. 2004).

Finally, under the *Martinez* exception, ineffective assistance of trial counsel claims are not procedurally defaulted if: (1) the default was caused by ineffective assistance of post-conviction counsel, (2) that occurred in the first collateral proceeding in which the claim could be heard, and (3) the underlying claim of trial counsel's ineffectiveness has some merit, analogous to the substantiality requirement for a certificate of appealability. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

C

*Strickland v. Washington's* two-part test governs ineffective assistance of counsel claims. 466 U.S. 668, 669 (1984). To succeed, Johnson must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness", and (2) he "suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687). His claim cannot proceed if he fails to demonstrate either prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one . . . ."). "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* at 698.

5

With respect to counsel's performance, there is a "strong presumption" it was not deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Where "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy . . . could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005).

To establish prejudice, Johnson must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The Court must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. Counsel cannot be found to be ineffective for failing to pursue a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'") (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

### III

### A

Johnson contends trial counsel should have challenged his son Marcus, Jr.'s competency to testify. (Am. Pet. 9, ECF 11.) Johnson claims his son—who was

6

thirteen years old at the time of trial—contradicted his account of the events leading up to Eugene's murder, and that this was crucial to his conviction. (*Id.* at 10.) He also argues his son's testimony regarding his "tone and demeanor" prior to shooting his longtime girlfriend was similarly harmful to his case. (*Id.* at 11.) The PCRA court determined Johnson could not demonstrate the necessary prejudice for an ineffective assistance of counsel claim because Marcus, Jr.'s testimony was cumulative of his own and therefore not prejudicial. (R. & R. 13, ECF 24.) Johnson argues this finding was based on an unreasonable determination of the facts, claiming the testimony was not cumulative. (*Id.* at 14.) Although Judge Reid agreed with Johnson that the Superior Court erred in concluding his son's testimony was cumulative, he ultimately concluded Johnson had not shown the required prejudice for an ineffective assistance of counsel claim. (*Id.* at 15.)

Judge Reid was correct. Even if counsel had challenged Marcus Jr.'s competency and was successful in excluding the boy's testimony, there is no "reasonable probability" that "the result of the proceedings would have been different." *Strickland*, 446 U.S. at 694. Johnson himself told the jury how he threatened Eugene multiple times leading up to the murder, texting he wanted to choke her, was worried he'd murder her, and understood "how people get angry and stressed enough to kill another." (N.T. 6/24/16 at 50:23–51:5; 57:20–21; 59:8–9). He also admitted that while he and Eugene were arguing he retrieved his gun, placed it on the TV stand, challenged her to "keep talking to [him] like that" (*Id.* at 106:11–18), and then shot her (*Id.* at 6/24/16 at 37:4). Philadelphia Police Officer Robert Stott explained the gun was in working order at the time of the shooting (N.T. 6/22/16 at 136:2–3), how it took five and a half pounds of

pressure to pull the trigger on the gun (*Id.* at 138:2–3), and how Johnson would have had to pull the trigger six individual times to fire six bullets (*Id.* at 140:11–18). Dr. Chu, the Commonwealth's medical expert, also told the jury that Eugene had six gunshot wounds to her body (N.T. 6/21/16 at 193:12–13), and that two of the bullets struck the back of Eugene's head and neck (*Id.* at 197:2–3). Given all of this, the exclusion of Johnson Jr.'s testimony would not have created a reasonable probability of a different outcome.

### B

Second, Johnson faults his lawyer for failing to object to the admission of text messages he sent to Eugene days before her death. In these messages, Johnson stated he "wanted to choke [Eugene]," and that he left their house because he didn't "want to be in jail for murder." (Commonwealth Ex. 42 at 62–64.) He texted her that he understood "how people get angry enough and stressed enough to kill another." *Id.* Johnson argues the Commonwealth failed to authenticate and lay proper foundation for the messages' admission, something counsel should have contested. (Am. Pet. 12, ECF 11.) The Superior Court held that Johnson's "brief lack[ed] any citations to case law or the Rules of Evidence in support of his claim." *Commonwealth v. Johnson*, 241 A.3d 368 at *6 (Pa. Super. Ct. 2020) (Table). Accordingly, the court deemed this claim waived under Pennsylvania Rule of Appellate Procedure 2119. *Id.* In his petition, Johnson argues the Superior Court's decision "places form over substance and should be disregarded." (Am. Pet. 18, ECF 11.) Judge Reid disagreed, finding Johnson's claim barred from federal review because the Superior Court dismissed it on the basis of an independent and adequate state procedural rule. *See Coleman*, 501 U.S. at 750 (1991); *Davila*, 137 S. Ct. at 2064. Johnson believes the Superior Court considered the merits

of his claim, despite determining that he waived it. (Pet'r Obj. 3, ECF 25.) Although the Superior Court concluded in a footnote the claim was meritless, *see Johnson*, 241 A.3d at *5 n.6, it dismissed Johnson's claim as procedurally defaulted based on an independent and adequate state law ground, barring this claim from habeas review. *See Leake v. Dillman*, 594 F. App'x 756, 758 (3d Cir. 2014) (holding that a state court's dismissal of a claim for failure to develop the argument pursuant to Pa. R.A.P. 2119(a) was a dismissal on an independent and adequate state procedural rule which barred subsequent federal habeas review.)

Johnson can only avoid this bar if he can show "cause for the default and prejudice attributable thereto," or by "demonstrat[ing] that the failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed,* 489 U.S. 255, 262 (1989). Johnson cannot show prejudice because he cannot show a reasonable probability that the trial would have had a different outcome. *See Strickland*, 446 U.S. at 694. Nor can he demonstrate a fundamental miscarriage of justice occurred because he has produced no evidence that he is actually innocent. *See Hubbard*, 378 F.3d at 339 (a claim of actual innocence requires a petitioner to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.")

Johnson also argues the jury received inaccurate information because the PCRA court wrote that Philadelphia Police Detective Francis Graf obtained the threatening text messages Johnson sent to Eugene from Johnson's phone, when they actually came from a forensic analysis of Eugene's phone. (Am. Pet. 14, ECF 11; Commonwealth's Ex. 42.) Any such mistake in the PCRA court's opinion is irrelevant because the jurors were

9

not misinformed as to the source of the messages.  Detective Graf testified that the messages came from Eugene's phone, *see* (N.T. 6/23/16 at 26:17–19), and the trial court's opinion properly recounts how the forensic report of the text messages derived from an analysis of Eugene's phone.  *See Johnson*, 2017 WL 2984013, at *7.  Moreover, any issues regarding the authentication of the messages was immaterial to the outcome of the case because Johnson himself testified he wrote the messages.  *See* (N.T. 6/24/16 at 50:23–51:5; 57:21–21; 59:8–9.)

To the extent Johnson's petition pertains to separate text messages he sent various women using Eugene's phone, he similarly fails to show any prejudice.  Johnson argues that the "misidentification of the phone from which the text messages came was material" because the "Commonwealth['s] theory required the jury to believe Petitioner had inserted his own SIM card into the decedent's phone and used it to exchange multiple text messages with several women."  (Am. Pet. 15, ECF 15.)  Johnson's argument is confusing, because the text messages Johnson sent other women using Eugene's phone are unrelated to the threats he sent Eugene.  Johnson sent those messages to Eugene using his own phone prior to her smashing it after she found he was texting other girls.  *Johnson*, 2017 WL 2984013, at *1.  After Eugene broke his phone, Johnson inserted his SIM card into Eugene's phone and continued texting other women.  Johnson's use of Eugene's phone to text other women was not part of the Commonwealth's "theory," just something Johnson admitted on the stand.  *See* (N.T. 6/24/16 at 103:12–13.)

## C

Johnson's third claim is that there was insufficient evidence for the jury to convict him of first-degree murder, specifically that the Commonwealth presented no

evidence showing he had the specific intent to kill Eugene.  (Am. Pet. 18, ECF 11)
When analyzing a sufficiency of the evidence claim in a habeas case, "the critical
inquiry . . . does not require a court to ask itself whether it believes that the evidence at trial
established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 433 U.S. 307, 319 (1979).
Instead, the Court must review "the evidence in the light most favorable to the prosecution and
determine if *any rational* trier of fact could have found the essential elements of the crime
beyond a reasonable doubt." *Id.* (emphasis in original).

Judge Reid determined that despite Johnson's arguments, "it is impossible to conclude
that *no* trier of fact could have found proof of malice sufficient to support a conviction for first-
degree murder."  (R. & R. 13, ECF 24.)  Johnson argues instead that the Superior Court's
application of the law was based on an unreasonable determination of the facts, that
Johnson was in danger at the moment he shot Eugene, and that Judge Reid ignored
defense witness Dr. Jonathan Alden's testimony as it related to self-defense.  (Pet'r Obj.
4–5, ECF 25.)

Johnson's arguments are meritless.  The Commonwealth presented more than
enough evidence for a rational trier of fact to convict Johnson of first-degree murder.
The Commonwealth may establish that Johnson "intentionally killed another 'solely by
circumstantial evidence, and the fact finder may infer that the defendant intended to
kill a victim based on the defendant's use of a deadly weapon on a vital part of the
victim's body.'" *Commonwealth v. Housman*, 226 A.3d 1249, 1271 (Pa. 2020) (quoting
*Commonwealth v. May*, 887 A.2d 750, 753 (Pa. 2005).  Johnson admitted at trial that
during an argument with Eugene he retrieved his gun, placed it on the dresser and
challenged her to "keep talking to [him] like that."  (N.T. 6/24/16 at 106:11–18).

11

Johnson further testified that after a "mild struggle" he got the gun out of her hands and into his before the gun fired.  (N.T. 6/24/16 at 110:14–19.)  The jury also heard Eugene was shot six times, twice to the back of the head and neck area, and that each shot required a separate pull of the trigger.  (N.T. 6/21/16 at 193:12–13; 194:22–24; 197:2–3.)  Considering this evidence in the light most favorable to the prosecution, a rational trier of fact could have easily concluded beyond a reasonable doubt that Johnson intended to kill Eugene.

### D

Johnson argues next that the eleven ineffective assistance claims he raised on his PCRA appeal—but failed to include in his PCRA petition—should not be considered procedurally defaulted, but should be considered under the *Martinez* exception.  (Am. Pet. 25, ECF 11.)  The Superior Court dismissed these claims because "a claim not raised in a PCRA petition cannot be raised for the first time on appeal."  *Johnson*, 241 A.3d at *5 (quoting *Commonwealth v. Santiago*, 855 A.2d 682, 691 (Pa. 2004)); *see* Pa. R. Crim. P. 902(B) ("Each ground relied upon in support of the relief requested shall be stated in the [PCRA] petition.  Failure to state such a ground in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."); Pa. R. App. P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Johnson believes that even if the claims were waived, they should be reviewed under the *Martinez* exception.  (Pet'r Obj. 5, ECF 25.)  Again, under *Martinez*, ineffective assistance of trial counsel claims are not procedurally defaulted if:  (1) the default was caused by ineffective assistance of post-conviction counsel, (2) that occurred in the first collateral proceeding in which

the claim could be heard, and (3) the underlying claim of trial counsel's ineffectiveness has some merit. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

i

Johnson claims appellate counsel erred in failing to raise on direct appeal the trial court's exclusion of Johnson's brother, Robert Jackson's hearsay statements.  He argues they were admissible as "excited utterances."  (Am. Pet. 26, ECF 11.)  He claims PCRA counsel was also ineffective for failing to include this claim in his petition and it should therefore be reviewed under *Martinez*.  But Johnson must show the underlying ineffective assistance of counsel claim has some merit.

The evidence Johnson sought to have admitted was his brother's testimony that Johnson said to him "why did she [Eugene] touch me?" five to seven hours after he shot Eugene.  Johnson contends this statement "went to the very core of the defense's theory of provocation" and corroborated his testimony.  (Am. Pet. 29, ECF 11.)  There is no reasonable probability that but for this statement's exclusion the outcome of the trial would have been different.  *See Strickland,* 466 U.S. at 694.  Johnson presented his self-defense theory at trial and the jury rejected it.  The admission of this statement would not have exculpated Johnson, and counsel was not ineffective for failing to pursue this claim.

ii

Johnson next brings four ineffective assistance of counsel claims surrounding the testimony of witness Shavone Robinson.  Robinson was Johnson's Walmart co-worker, with whom he had an affair between 2012 and 2014.  (N.T. 6/22/2016, 226:5–11.)  After Eugene's death, Robinson sent Eugene's sister a Facebook message indicating that

13

Eugene's death "probably wasn't an accident." (*Id.* at 226:22–227:5–6.) When asked during direct examination why she sent that message, Robinson stated that Johnson told her "he was about to be in jail for the rest of his life for shooting [Eugene] because she pulled out a knife." (*Id.* at 228:17–21.) Defense counsel objected, and at sidebar, the prosecutor told the court that on the first day of trial, Robinson spoke to Detective Graf and explained that the message she sent was not true, but sent it because she was mad at Johnson. (*Id.* at 239:2–5, 254:16–22.) However, the prosecution explained it was unaware of Robinson's second statement and only learned about the details of her conversation with Johnson as she testified. (*Id.* at 239:5–8.) Johnson faults appellate counsel for failing to raise a *Brady* claim on direct appeal regarding the Commonwealth's failure to disclose that Robinson told prosecutors her message was a lie. He also faults trial counsel for failing to challenge the admission of Robinson's testimony and claims trial counsel should have impeached Robinson instead of agreeing to a stipulation about Robinson's testimony. Finally, he argues that trial counsel failed to request a mistrial after Robinson's testimony, and to the extent the claim was preserved, he contends appellate counsel erred in failing to assert the claim on direct appeal. (Am. Pet. 30–44.)

First, for Johnson to establish a due process violation under *Brady,* he must show that "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *United States v. Pelullo,* 399 F.3d 197, 209 (3d Cir. 2005) (internal quotation marks omitted). Johnson's *Brady* claim is meritless because no evidence was suppressed. The prosecution was unaware of Robinson's conversation with Johnson

before she testified about it at trial (N.T. 6/22/2016 at 239:5–8), and Robinson's prior statement to the detective that she lied to Eugene's sister was disclosed at trial in the stipulation read to the jury (Commonwealth Ex. 50). *See United States v. Schneider*, 801 F.3d 186, 202 (3d Cir. 2015) (holding no *Brady* violation occurred where previously undisclosed evidence was disclosed on the second day of trial).

Johnson's claims that counsel was ineffective for failing to challenge the admission of Robinson's testimony, to move for a mistrial or to impeach her are equally groundless. Trial counsel initially objected to Robinson's testimony and moved for a mistrial, but Johnson agreed—after a thorough on-the-record colloquy with the judge—with his lawyer's decision to withdraw the motion and instead present a stipulation to the jury regarding Robinson's testimony. (N.T. 6/23/16 at 11:2–13:23; R. & R. 24–25, ECF 24.) Johnson now believes counsel should have moved for the mistrial on the specific grounds that Robinson admitted to lying and that the prosecutor "put Robinson on the stand knowing that it was quite likely" she would lie again. (Pet'r Obj. 10, ECF 25.) He also claims impeaching Robinson would have had a greater impact than the "cold, dispassionate understatement" of the stipulation that was read to the jury." (*Id.* at 12.) Counsel's decision to withdraw the motion for a mistrial and present a stipulation was a strategic decision and, in any event, did not prejudice Johnson because the stipulation encapsulated "what either side would have presented had [Robinson] been called to testify or recalled to testify." (N.T. 6/23/16 at 7:3–5.) The stipulation explained that Robinson had been fired from Walmart after fighting with another co-worker with whom Johnson was also having an affair. (Commonwealth Ex. 50.) The stipulation went on to explain how the day after she was fired, Robinson

logged onto Facebook and sent Eugene's sister the message implying Johnson had planned Eugene's shooting; however, the stipulation noted that on the first day of trial, Eugene met with Detective Graf and told him the message "was not true and that she only made the claim because she was angry at Mr. Johnson." (*Id.*)  The stipulation also explained that her trial testimony was the first time Eugene mentioned her conversation with Johnson where he stated he'd be in jail for shooting Eugene, despite her having previously discussed her testimony with the Commonwealth. (*Id.*)  The stipulation effectively discredited Robinson while simultaneously barring further testimony about Johnson's prior statements about shooting Eugene.[1]

### iii

Johnson next contends that counsel was ineffective with respect to the medical testimony of prosecution witness Albert Chu, M.D.  Dr. Chu testified about the autopsy performed on Eugene's body by Dr. Marlon Osborne, who by the time of trial was no longer working for the medical examiner's office.  Johnson claims counsel was ineffective for failing to:  investigate and present medical and forensic evidence to support his testimony; challenge Dr. Chu's testimony; object to Dr. Chu's testimony or to compel Dr. Osborne to testify; ask the court to order Dr. Chu to prepare an independent written report; and move to strike portions of Dr. Chu's testimony not in the medical report.  (Am. Pet. 44–63, ECF 11.)

---

[1]     The trial judge explained to defense counsel that Robinson's testimony regarding her prior conversation with Johnson would be admissible at a new trial, stating it was "highly relevant evidence to [Johnson's] intent" and "goes to specific intent to kill." (N.T. 6/22/16 at 260:12–18.)  The judge told Johnson that "if [the court] granted a mistrial, there certainly would have been additional evidence presented at a new trial [that addressed] the question of [Johnson's] intent in the 48 hours [*sic*] and/or the time of this incident." (N.T. 6/23/16 at 12:13–19.)

As previously stated, Johnson must show his claims have "some merit" to succeed under *Martinez*, requiring him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *Id.*

Johnson fails to show any of these issues impacted his trial. He asserts his defense strategy was to "prove that the wounds the decedent suffered were consistent with Petitioner's version of events rather than the Commonwealth's version." (Am Pet. 44, ECF 11.) Johnson claims his lawyer would have been better prepared to more effectively cross-examine Dr. Chu had he investigated and "consulted" with Dr. Arden, his own expert, prior to trial. (*Id.* at 47.) He arrives at this conclusion because Dr. Arden testified that "Dr. Chu's findings lacked support." (*Id.*) However, there is no reasonable probability that the outcome of the trial would have been different had counsel employed the strategy Johnson now recommends. During his direct examination, Dr. Arden testified to every issue Johnson now claims counsel should have raised during Dr. Chu's cross examination. Johnson can show no prejudice because the medical testimony he claims was favorable to his theory and should have been used to question Dr. Chu was presented to the jurors.

Johnson's remaining claims related to the medical testimony are similarly meritless. Each issue revolves around Dr. Chu's testimony related to the autopsy. Because there were no eyewitnesses to the shooting who could support the Commonwealth's version of events, Johnson thinks the scientific evidence had to have strongly contributed to the jury's verdict, and that his lawyer's purported mistakes

regarding the medical testimony could have changed the trial's outcome. (Am. Pet. 55, ECF 11.) But there was more than enough evidence upon which the jury could base its verdict, *see supra* Section III.C, and Johnson cannot show how the verdict would have been different had trial counsel challenged Dr. Chu's testimony in the ways Johnson claims he should have.

iv

Finally, Johnson contends appellate counsel was ineffective for failing to appeal the court's limitation of the scope of trial counsel's cross examination of Johnson's brother, Robert Jackson. (Am. Pet. 67, ECF 11.) Johnson argues the court impermissibly restricted counsel's ability to question Jackson about statements Johnson made to him on the morning after the shooting. (*Id.* at 69–70.) Although not analyzed in the R&R, this final claim is also meritless. Nothing else Johnson's brother could have said would have changed the outcome of the trial. *See supra* Section III.D.i. Johnson retrieved his gun during the argument, threatened Eugene to keep arguing with him and then shot her six times, including twice in the back of her head. *See supra* Section III.C.

IV

For the reasons above, the Court adopts the R&R, overrules Johnson's objections and denies and dismisses Johnson's Petition.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

18